IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE |
| HORACE DULANEY, | NO. 1:23-CR-0066-MHC-CCB-2 |
| Defendant. | |

## ORDER

Defendant Horace Dulaney ("Dulaney") has been indicted on one count of conspiracy to make false statements to a firearms dealer in violation of 18 U.S.C. § 371 (Count One), thirteen counts of making false statements to firearms dealers in violation of 18 U.S.C. § 924(a)(1)(A) (Counts Two through Fourteen), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Fifteen). Criminal Indictment [Doc. 1]. This action comes before the Court on the Final Report and Recommendation ("R&R") of United States Magistrate Judge Christopher C. Bly [Doc. 62] recommending that Dulaney's Motion to Suppress Search and Seizure of Defendants' Vehicle Resulting From Unconstitutional Traffic Stop [Doc. 35], Motion to Suppress Search and Seizure of Cell Phones [Doc. 36], and Motion to Suppress Statements [Doc. 34] be denied.

The Order for Service of the R&R [Doc. 63] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Dulaney has filed his objections to the R&R [Doc. 65] ("Def.'s Objs.").

I. **LEGAL STANDARD**

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance

2

with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Ortiz objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II.   FACTUAL BACKGROUND

### A.   Circumstances Prior to the Day of the Traffic Stop

Dulaney and his co-Defendant Kiara Patrice Moore ("Moore") were investigated by agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") between March and August 2020 for trafficking in firearms. Tr. of Jan. 8, 2024, Evidentiary Hr'g ("Tr.") [Doc. 45[1]] at 15-16. On March 8, 2020, Dulaney, a convicted felon, attempted to purchase a firearm at a gun show in Marietta, Georgia, but was denied after a background check. Id. at 17-18, 24-25, 108-09. ATF agents subsequently obtained information from stores in which firearms were purchased that showed that Moore purchased in excess of 40 firearms costing over $20,000 from various firearms dealers in this District prior to and including August 20, 2020, the day of the traffic stop, often accompanied by a black male whose debit card was used to fund some of the purchases. Id. at 24-26, 111-12.

---

[1] The transcript page number references in this Order refer to the actual page of the transcript rather than the number on the docket.

3

### B. The Day of the Traffic Stop

On August 20, 2020, then-ATF Special Agent Jonathan Gray was contacted by the owner of Grove Pawn, a federal firearms licensee where Moore had previously purchased firearms, and was told that Moore and a black gentleman were in the store attempting to purchase additional firearms; this information led Gray and ATF Agent Diaz to initiate surveillance. Tr. at 16, 112-13, 128-30. The owner of Grove Pawn told Gray that "they're buying firearms," and the ATF agents saw Moore and Dulaney exiting the store with Dulaney carrying boxes of firearms. Id. at 115, 130-31. Dulaney put the firearms in the back seat of a white Nissan Pathfinder, and Dulaney drove himself and Moore away from the area. Id. at 114, 131.

Agents Gray and Diaz followed Dulaney and Moore up Interstate 85 and Gray contacted the Georgia State Patrol ("GSP") for assistance. Id. at 113-14. Gray advised the GSP that Moore had just purchased five firearms from Grove Pawn, that Moore and Dulaney were suspects in a drug trafficking scheme in which firearms were purchased in Georgia for transport elsewhere, and that Dulaney was a convicted felon with an outstanding arrest warrant. Id. at 77-78, 114. The GSP ran Dulaney's name through the National Crime Information Center

(NCIC) and got a "hit" indicating that there was an outstanding warrant and Dulaney was a flight risk. Id. at 76-77.

GSP troopers stopped the Nissan Pathfinder for Dulaney's failure to maintain his lane, a traffic violation, on Interstate 85 near Commerce, Georgia. Id. at 75-77, 84. When the troopers approached the car, they immediately smelled "a very pungent odor of marijuana." Id. at 103-04. Dulaney was placed in handcuffs and the vehicle was searched. Id. at 28, 30. The items seized during the search included nine firearms, a quantity of marijuana, three cell phones, a grinder, and a scale. Id. at 31. One of the cell phones was in "navigation mode," and one of the troopers saw in plain view that the vehicle was traveling on Interstate 85, had three to four hours left on the "time to destination," and the vehicle was stopped approximately thirty miles from the Georgia-South Carolina state line, suggesting that Dulaney and Moore were traveling out-of-state. Id. at 83-84.

ATF agents took possession of the marijuana, firearms, and three cell phones.[2] Id. at 127. Both the surveillance of Moore and Dulaney and the review of the gun store videos revealed that the two used cell phones during the firearms

---

[2] As part of the purchase process, Moore completed an ATF form and listed a cell phone number so that the gun dealer could notify her when she cleared the background check. Tr. at 124-25.

5

transactions at Grove Pawn. Id. at 45-46, 126. On August 28, 2020, ATF Special Agent Emily Norris applied for and received a search warrant from United States Magistrate Judge Justin S. Anand to search the three cell phones recovered from the vehicle. Id. at 38. The cell phone search did not occur until after the warrant was issued. Id. at 127-28.

## III. DULANEY'S OBJECTIONS

### A. Attempt to Incorporate Prior Arguments From Briefing Before the Magistrate Judge

Dulaney "incorporates all previous arguments made in earlier briefs into his objections to the Court's R&R." Def.'s Objs. at 1. "[A] party does not state a valid objection to an R&R by merely incorporating by reference previous filings." Hammonds v. Jackson, No. 13-CV-711-MHC, 2015 WL 12866453 at *6 n.2 (N.D. Ga. May 18, 2015); see also Masimo Corp. v. Philips Elec. N.A. Corp., 62 F. Supp. 3d 368, 376 (D. Del. 2014) (holding that underlying briefs may not be incorporated by reference when filing objections to a report and recommendation); Morrison v. Parker, 90 F. Supp. 2d 876, 878 (W.D. Mich. 2000) ("Plaintiffs' general, nonspecific objections, purporting to incorporate by reference their earlier brief, are tantamount to no objection at all and do not warrant further review.") (citations omitted). This Court will not consider as proper objections Dulaney's reference to prior arguments he made to the Magistrate Judge.

6

**B.     Dulaney's Objection to the Magistrate Judge's Finding that the Government Could Seize the Cell Phones Under the Plain View Doctrine[3]**

The Magistrate Judge recommends denial of Dulaney's Motion to Suppress Search and Seizure of Cell Phones under the plain view doctrine because the officers were lawfully located in the place in which the phones were in plain view, and the incriminating character of the cell phones was immediately apparent because there was probable cause to believe that Moore and Dulaney were engaged in firearms trafficking and that evidence of that crime could be found on the cell phones. R&R at 13-17. Specifically, the Magistrate Judge cited to portions of the record revealing the following facts:

- The troopers could lawfully search the car because they had probable cause to believe they would find evidence of illegal drugs based upon the smell of marijuana and evidence of Dulaney being in possession of a firearm.

---

[3] Dulaney does not object to the Magistrate Judge's recommended denial of his Motion to Suppress Search and Seizure of Defendants' Vehicle Resulting From Unconstitutional Traffic Stop or his Motion to Suppress Statements.

7

- There was probable cause to believe the cell phones would contain evidence of firearms trafficking because (1) Moore spent more than $20,000 to purchase over 40 firearms, predominantly 9mm and 40mm handguns, between March 2020-August 2020, (2) Moore traveled to multiple gun stores within a short period of time to purchase similar models and calibers, (3) Moore was accompanied by Delaney, who financed some of the purchases, (4) Moore and Delaney were observed using cell phones during the firearms transactions, and (5) Moore and Delaney were observed purchasing guns together at Grove Pawn on August 20, 2020, which were then placed by Delaney in the back seat of the vehicle he was driving.

- There was probable cause to believe that evidence of firearms trafficking would be located on the cell phones found in the vehicle because (1) Moore and Delaney were observed using the cell phones during the firearms transactions, (2) there was testimony from ATF Special Agent Emily Norris that, based on her training and experience, someone who purchases guns for someone else will often use a phone during the transaction to receive orders from the actual recipient, (3) Moore listed a cell phone number on the ATF form she

completed as part of her purchase, and (4) one of the seized cell phones was in plain view in the vehicle and set to navigation mode, which revealed that Moore and Dulaney were headed out-of-state.

R&R at 15-17.

Dulaney argues that the fact that he was using his cell phone while Moore purchased firearms did not provide probable cause to seize the phone without a warrant. Def.'s Objs. at 5-6. More specifically, Dulaney asserts that there was no information that proved that Dulaney was using the cell phone to conduct firearms trafficking or that the use of a navigation app should authorize such a seizure. Id. at 6-7.

The Fourth Amendment to the United States Constitution protects an individual's right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. A "seizure" of personal property occurs for purposes of the Fourth Amendment if the police meaningfully interfere with an individual's possessory interests in that property. United States v. Jacobsen, 466 U.S. 109, 113 (1984). Given that there was no search warrant initially to seize the cell phones, the Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable under the Fourth Amendment. Vale v. Louisiana, 399 U.S. 30, 34 (1969).

9

The plain view doctrine is an exception to the Fourth Amendment's warrant requirement. Horton v. California, 496 U.S. 128, 136 (1990). Officers may seize evidence that is in plain view despite the failure to obtain a search warrant if two elements are met: "(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and, (2) the incriminating character of the item is immediately apparent." United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006). Dulaney does not challenge the Magistrate Judge's determination that the state troopers had probable cause to search the vehicle and, therefore, were "lawfully located in the place from which the seized object could be plainly viewed." See R&R at 14 n.6. Nevertheless, Dulaney argues that there is nothing inherently suspicious about Dulaney having used his cell phone or having the phone set on a navigation app, evidently contending that the incriminating character of the evidence was not "immediately apparent." Def.'s Objs. at 5-7.

The "immediately apparent" language does not require a law enforcement officer to "'know' that certain items are contraband or evidence of a crime." Texas v. Brown, 460 U.S. 730, 741 (1983). Indeed, "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."

10

Payton v. New York, 445 U.S. 573, 587 (1980). With regard to probable cause, the Supreme Court has held as follows:

> [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176 (1949).

Brown, 460 U.S. at 741-42 (parallel citations omitted). Additionally, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972). In determining whether probable cause exists, the Court "'deal[s] with probabilities . . . [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar, 338 U.S. at 175).

This Court agrees with the Magistrate Judge that the agents had probable cause to believe that the cell phones would contain evidence of firearms trafficking, thereby subjecting them to seizure under the plain view doctrine. This was not, as Dulaney would have this Court find, a situation where the existence of the cell phones did not implicate some criminal activity. On the contrary, prior to the viewing of the cell phones in the vehicle that was properly searched, the agents

11

"had ample probable cause to believe that Moore and Delaney were engaged in firearms trafficking." R&R at 15-16 (listing indicia of probable cause). And, importantly, the agents had probable cause to believe that evidence of such firearms trafficking would be located on the cell phones they observed in plain view in the vehicle driven by Dulaney:

> Agent Gray testified that in the course of conducting surveillance and reviewing the gun-store videos, Moore and Dulaney were observed using cell phones at Grove Pawn during the firearms transactions. And Agent Norris explained that someone using a cell phone during a firearms purchase can be another indicator of firearms trafficking. She testified that, in her training and experience, someone purchasing a gun for someone else will often use a phone during the transaction to "take orders" from the actual recipient of the gun. Furthermore, Agent Gray testified that Moore had listed a cell phone number on the ATF 4473 forms that she completed when purchasing firearms. The form requires a phone number so that the firearms dealer can call the applicant after completing the background check. And finally, one of the seized phones was in plain view in the vehicle and it was set to navigation mode, which could have given the agents evidence about where Dulaney and Moore were headed—and where the soon-to-be recipient of the recently purchased firearms might be located.

R&R at 16 (record citations omitted).

Because the agents had probable cause to believe that Moore and Dulaney were engaged in firearms trafficking, and that evidence of this crime would be found on the cell phones, there was a lawful seizure under the plain view doctrine. Therefore, Dulaney's objections to the Magistrate Judge's denial of his Motion to Suppress Search and Seizure of Cell Phones is **OVERRULED**.

## IV. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Dulaney objects, the Court **OVERRULES** his objections [Doc. 65]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 62] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Dulaney's Motion to Suppress Search and Seizure of Defendants' Vehicle Resulting From Unconstitutional Traffic Stop [Doc. 35], Motion to Suppress Search and Seizure of Cell Phones [Doc. 36], and Motion to Suppress Statements [Doc. 34] are **DENIED**.

**IT IS SO ORDERED** this 23rd day of August, 2024.

_____
MARK H. COHEN
United States District Judge